IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **BIRCH ASSOCIATES, LLC** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. **PJM 10-2257** |
| | * | |
| **IKEA U.S. EAST, LLC** | * | |
| | * | |
| Defendant. | * | |

## MEMORANDUM OPINION

Birch Associates, LLC, ("Birch") has sued IKEA U.S. East, LLC, ("IKEA") for breach of contract and unjust enrichment. Earlier this year, this Court granted IKEA's Motion for Summary Judgment as to the breach of contract counts, but denied it as to the unjust enrichment count. While the Court found that Birch had offered no admissible evidence if its lost profits, at the end of the hearing, the Court instructed Birch that if it could identify evidence that specifically supported its claim for such profits, it could file a motion for reconsideration. Birch has now filed a Motion for Reconsideration (Paper No. 92). For the reasons that follow, the Motion is **DENIED**.

I.

IKEA is in the retail furnishing and decoration business, selling, among other things, kitchen products and fixtures. On August 13, 2005, IKEA entered into an Agreement with Birch for kitchen installation services. Pursuant to the Agreement, Birch was designated an Installation Service Provider ("ISP"), to whom IKEA would refer customers who purchased their products. Gregory Birmingham, Birch's President and sole owner, signed the contract on the company's behalf.

As of August 2005, Birch worked exclusively for IKEA. To handle the account, it hired employees, purchased vans, and leased office space. It also trained IKEA employees in kitchen installation. In 2008, Birch, through IKEA, offered two 50%-off cabinet installation promotions. The first was to boost its own sales, and the second was at IKEA's request.

Starting in October 2007, Birch's referrals from IKEA began to decline, and its sales fell correspondingly. Two months later, Birmingham confronted IKEA about these declining referrals. According to Birmingham, at least one IKEA manager confirmed that IKEA was using other contractors. Birmingham also states that another IKEA representative advised him that Birch remained IKEA's primary ISP.

On December 8, 2008, IKEA terminated the Agreement, citing the lapse in Birch's Washington D.C. business license and its failure to comply with IKEA policies.

Birch then sued IKEA for, among other things, breach of contract and unjust enrichment. On July 6, 2012, it sought to introduce an expert report and expert testimony on damages, but the Court excluded that report and testimony after IKEA objected to the expert designation as untimely. At oral argument, on August 28, 2012, the Court granted summary judgment in favor of IKEA on Birch's breach of contract claims, and instructed counsel for Birch that if he could identify which evidence *specifically supported* his claim for loss profits, the Court would consider a motion for reconsideration.

## II.

Birch cites the following as proof that it can calculate the lost profits based on past performance:

(1) Its 2005 to 2009 tax returns, showing profits and expenses for each year prior to and after the breach;

(2) Its profit and loss statements, reintroduced by IKEA during its deposition of Gregory Birmingham on March 18, 2012;

(3) Its calculation of damages to IKEA in response to IKEA's request for production of documents, dated June 18, 2011; and

(4) Its reported income to the IRS and the State of Maryland for the period from 2005 to 2011.

IKEA responds that "Birch has [*still*] failed to show any lost profit damages as a result of any alleged breach" that occurred when IKEA terminated the Agreement without three months of notice or cause for immediate termination. It contends that the issue is not whether Birch's income merely dropped after IKEA's alleged breach, but whether Birch can identify with reasonable precision what lost profits are attributable to IKEA's alleged breaches, viz. its failure to give 90 days' notice to terminate the Agreement without cause. IKEA emphasizes that, pursuant to this Court's prior order, there is no expert who can testify on the relationship between the tax returns and the precise amount of profits or the specific cause of those loss profits.

With respect to the tax returns and reported income to the State of Maryland, IKEA argues that this evidence is insufficient because "[t]o say generally income went up or down is not admissible evidence upon which a fact-finder can distill 90 days of lost profit damages from December 8, 2008[,] to March 8, 2009[,] due to IKEA actions without the ranked speculation." With respect to Birch's profit and loss statements, IKEA notes that Birmingham himself had rejected these very statements as "irrelevant," "completely useless," and as documents having "no meaning." Moreover, the documents, according to IKEA, have no foundation. As to Birch's calculation of damages, IKEA argues that the calculations are pure guesswork; indeed, it is

difficult to untangle what is fact from assumption.  Further, says IKEA, Birmingham disclaimed knowledge of these very calculations and figures during his deposition.  Finally, according to IKEA, no fact-finder could, without wild speculation, form a reasonably certain opinion about Birch's figures – particularly insofar as they purport to make projections far into the future.

In a claim for breach of contract, where the recovery sought is lost profits, Maryland courts apply a three-prong test: (1) a plaintiff must show that a breach by the defendant was the cause of the loss; (2) damages may not be awarded unless, when the contract was executed, the defendant could have reasonably foreseen that the loss of profits would be a probable result of a breach; and (3) lost profits may not be recovered unless they can be proved with "reasonable certainty," as distinguished from "certainty." *Planmatics, Inc. v. Showers*, 137 F. Supp. 2d 616, 622 (D. Md. 2001) (quotations and citations omitted).

Again, Birch has failed to identify its alleged lost profits with "reasonable certainty." Although Birch has provided many documents that purport to show *income* for Birch Associates over various years, there does not appear to be any breakdown of how much of that net income came from Birch's contract with IKEA, nor does there appear to be any basis – whether receipts, invoices, or billings – that document the value of the relationship between Birch and IKEA. Furthermore, there is no indication of how much of the decrease in income came from IKEA's allegedly premature termination of the Agreement.  On this very limited record, neither this Court nor a jury could reasonably conclude that *all* of Birch's losses were due to IKEA's premature termination.

Moreover, Birch's briefing on the link between the alleged breaches and the lost profits is very hard to track.  Counsel asserts that whole categories of documents ("Birch Associates

LLC's Tax Returns for 2005-2009") support his request, but he fails to identify which numbers are important, what the calculations are, or what losses are attributable to the breaches asserted.

With respect to the calculation of damages, Birch has no individual who will be able to testify about where the numbers in these documents came from.  Birmingham admitted during his deposition that he has no personal knowledge about the numbers contained in the calculation of damages, and Birch has been precluded from offering expert testimony by reason of this Court's prior order.

Finally, Birch fails to identify with any precision *where* in these documents it finds support for its theory of lost profits.  Its briefing on this issue consists of four exhibits, totaling almost 100 pages, without any reference in its Motion to particular numbers or an explanation of why those numbers are relevant to the Court's inquiry.  Birch simply cites whole exhibits in support of his claim.  It is neither the Court's obligation nor its inclination to attempt to piece together a coherent argument from over a hundred pages of business records Birch has submitted.

### IV.

For the foregoing reasons, the Court **DENIES** Birch's Motion for Reconsideration (Paper No. 92).

A separate Order will **ISSUE**.

                                                  /s/
                            **PETER J. MESSITTE**
                      **UNITED STATES DISTRICT JUDGE**

**November 26, 2012**